IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

SHANTYRY MARTIN, §
    Plaintiff §
§
§
v. §
§ CIVIL ACTION NO.
§ 5:23-cv-169
§
SEDGWICK CLAIMS §
MANAGEMENT COMPANY, INC. §
and §
GENERAL ELECTRIC COMPANY, §
    Defendants §

## PLAINTIFF'S ORIGINAL COMPLAINT

Shantyry Martin suffers from Lupus and other debilitating conditions. Sedgwick Claims Management Services and General Electric wrongfully denied Shantyry Martin's claim for benefits made under GE's salary continuation program, and as a result, deprived her from receiving salary continuation benefits as well as long-term disability (LTD) benefits.

### I. PARTIES

1.    Plaintiff Shantyry Martin is a resident of San Antonio, Bexar County, Texas.

2.    Defendant Sedgwick Claims Management Services, Inc. is incorporated in Illinois and has its principal place of business in Memphis Tennessee. Sedgwick administers disability claims in Texas, is licensed to do

1

business in Texas, and can be served with citation by serving its agent for service of legal process in Texas: Corporation Service Company d/b/a CSC Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-3136.

3. Defendant General Electric Company (GE) is incorporated in New York and has its principal places of business in New York and Boston, Massachusetts. GE and its subsidiaries do business in Texas, are licensed to do business in Texas, and can be served with citation by serving GE's agent for service of legal process in Texas: CT Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas. 75201-3136.

## II. JURISDICTION AND VENUE

4. This lawsuit is Shantyry Martins' claim for salary continuation benefits offered to GE employees under its salary continuation program, and a claim for consequential damages as a result of Sedgwick and GE's breach of that agreement to provide salary continuation benefits to her in the event that she became disabled.

5. This Court has diversity jurisdiction as the matter in controversy exceeds $75,000 exclusive of interest and costs, and is between citizens of different States. Plaintiff Martin resides in San Antonio, Bexar County, Texas. She is a citizen of Texas. Defendant Sedgwick is incorporated in Illinois and has its principal place of business in Memphis, Tennessee. For diversity purposes, Sedgwick is not a citizen of Texas. Defendant GE is incorporated in New York

and has its principal place of business in New York and Massachusetts. For diversity purposes, GE is not a citizen of Texas. As a result, this Court has diversity jurisdiction under the authority of 28 U.S.C. §1332(a)(1).

6. Venue is proper in the Western District of Texas, San Antonio Division, as the disability benefit payment obligations of Sedgwick/GE are to Martin at her home in San Antonio, Bexar County, Texas.

### III. STATEMENT OF FACTS

*Background*

7. Shantyry Martin joined the United States Air Force Reserves and completed her basic training at Lackland Air Force Base in August 2004. At that time, she began work for the U.S. Air Force as a non-destructive tester inspector of the Air Force airplanes. She completed technical school in 2005, then began work as a non-destructive tester at Peterson AFB in Colorado Springs, Co. She was then assigned to Dover AFB to train on a joint oil analysis program. The command at Dover AFB was impressed with her work and offered her the opportunity to be one of the first individuals to train on the newest airframe, the F-22 Raptor at the First Fighter Wing, Langley AFB in Virginia. She accepted the offer. Then she moved to San Antonio briefly, trained with the reserves a Lackland AFB, and in 2010 received an honorable discharge.

8. After having her fifth child with her husband Christopher Martin Sr., a U.S. Army veteran who served twelve years active duty and then worked in the Civil Service, she resumed her work at Ft. Carson Army Base in Colorado as a

3

non-destructive inspector of military helicopters and weapons systems. The contract concluded in 2013 and she returned to Lackland as an inspector. By this time she had worked on over 20 different airframes, naval ships, bridges, spacecrafts, military vehicles and weapons systems.

9. Martin began working for GE as a quality inspector in May of 2015. She supervised inspectors on GE's USLNG project. The project involved the liquidation and transportation (through pipelines) of natural gas.

10. Unfortunately, unusual joint pain and fatigue began to interfere with Martin's ability to work. She was referred to Rheumatologist Alex DeJesus, M.D., who diagnosed her with Systemic Lupus Erythematosus (SLE) in 2016. She was also diagnosed with rheumatoid arthritis, gout and fibromyalgia that year. As a result of her deeply ingrained discipline acquired through her many years with the U.S. Air Force, as well as the need to support her family, despite these illnesses, she continued working with accommodations for her illnesses. In 2017 she was also diagnosed with peripheral neuropathy.

11. In 2018, due to the progression of her Lupus and her other diseases, Dr. DeJesus recommended that she stop working and take disability retirement. The demands of work were causing an accelerated progression of her diseases and a deterioration of her general health. Lupus and her other conditions were taking their toll on her joints, organs, fatigue levels, and even brain function.

12. Martin followed the advice of Dr. DeJesus. Her last day of work for GE was June 6, 2018.

*The Relevant Benefit Programs*

13. As a benefit of her employment for GE, Martin was automatically a participant in GE's salary continuation program (SCP). At her election, she was also a participant in the group long-term disability (LTD) plan offered to employees of various GE companies. She paid premiums for LTD coverage. She opted for the highest level of LTD benefits that was offered. If she was approved for LTD benefits, she would receive 70% of her pre-disability earnings. Martin earned $88,000 annually at the time that she became disabled.

14. The SCP is an ERISA-exempt "payroll practice" under the U.S. Department of Labor regulations. The program is a contract between GE and its employees: if they are eligible and are found to be disabled, GE is obligated to pay SCP benefits for a maximum period of 26 weeks. Martin was clearly eligible and met the requirements of the SCP due to her illnesses. Despite her eligibility, GE and Sedgwick denied her claim and her appeals for SCP benefits. This was a breach of contract.

15. Unlike the SCP, the LTD Plan in effect at the time that Martin became disabled (June 2018) is an ERISA group welfare plan.

*How Claims Under the SCP Program are Processed*

16. Notwithstanding the content of Sedgwick/GE's denial letters, that sometimes refer to the SCP as a short-term disability plan, it is a misnomer to call the SCP program a disability benefit plan. There is no written plan. It is a payroll

practice benefits program for employees that become disabled. The only written description of the program is within a summary plan description that summarizes the material terms of all GE benefits available to employees of GE and its participating subsidiaries (the GE Benefits Handbook).

17. The SCP is administered by claims personnel who simultaneously wear two hats: they make-up the GE Disability Benefits & Leave Center (GE Disability Center), and represent themselves to claimants as GE personnel. At the same time, they are employees of Sedgwick operating under a claims administration agreement with GE. Participants such as Martin who receive correspondence from them after filing a claim under the program receive letters that have a big GE logo on top left side of their correspondence and the GE Disability Benefits & Leave Center written in bold on the top right side of their letter. Sedgwick is surreptitiously involved. Correspondence may or may not mention that the individuals deciding claims and appeals on behalf of the GE Disability Center are not employees of GE but rather employees of Sedgwick. To accurately depict the claim and appeals process and the decision-makers, the decisions will be referred to as Sedgwick/GE decisions.

18. The description of the SCP in the GE Benefits Handbook corresponds. Employees are directed to call the GE Disability Benefits & Leave Center (referred to as the GE DBLC), not Sedgwick, if they are going to be absent for more than seven consecutive days due to illness.

*Agency Relationship*

19. During the claim and appeals process, Sedgwick acted at all times as GE's actual or apparent agent in deciding Martin's claim and her appeals. As a result, the breach of contract committed by Sedgwick in denying Martin's claim for benefits under the SCP program is attributable to GE.

***The Claim, Appeals, and Denials***

20. As directed by her GE Benefits Handbook, Martin notified the GE Disability Center that she was no longer able to work as of June 7, 2018 due to increasing symptoms of Lupus along with her other debilitating conditions. Sedgwick/GE denied her claim on June 29, 2018, claiming it did not receive an attending physician statement certifying her disability.

21. Martin promptly appealed and made a standard ERISA request for all documents relevant to her claim for benefits. In response to her request for documents, the GE Disability Center advised her that the SCP was not an ERISA plan, and therefore the claims procedures and disclosure requirements of ERISA didn't apply.

22. Dr. DeJesus provided Sedgwick a certification of her disability during this first appeal period as well as his treatment notes, indicating that Martin could not work due to severe joint pain and stiffness, as well as fatigue, caused by Lupus.

7

23. Sedgwick/GE sent the medical records it received to Network Medical Review Co. Ltd. (NMR), a vendor of medical opinions for insurers and claims administrators such as Sedgwick. NMR obtained the opinion of a rheumatologist who is often used by Sedgwick to review disability claims: David S. Silver, M.D. Dr. Silver, who is not licensed in Texas, provided a report to NMR and Sedgwick in which he acknowledged that Martin suffered from Lupus but concluded that there was a lack of physical findings of impairment in Dr. DeJesus's treatment notes to prove disability.

24. Martin responded to Dr. Silver's report as part of her first appeal, noting that, contrary to Dr. Silver's conclusion, her physical symptoms were recorded by Dr. DeJesus in his 6/25/2018 progress note. Her physical symptoms that were reported by Dr. DeJesus including the following: fatigued, sweating heavily at night, right eye worsening vision, blurry vision, floaters in visual field, photopsia, mouth sores, nasal mucosa ulcers, sinus pain, hearing loss in right ear, mouth dryness, ringing in ears, chest pain, palpitations, edema, tachycardia, leg pain with exercise, shortness of breath, cough, wheezing hemoptysis, abdominal pain, constipation, heartburn, heat intolerance, cold intolerance, dysphagia, headache, dizziness, vertigo, difficulty with balance, back pain, foot pain, and hand pain.

25. Nevertheless, relying upon Dr. Silver's report, Sedgwick/GE denied Martin's first appeal by letter dated September 4, 2018. In the September 4, 2018 letter, Sedgwick/GE erroneously indicated that Martin did not qualify for benefits

under the GE STD Plan (there was no such plan, at least that applied to Martin), and that the STD Plan was an ERISA plan (the SCP under which Martin's claim was being reviewed was not an ERISA plan).

26. By this time, Martin had applied for disability benefits from the Social Security Administration. She was told by Sedgwick/GE claims personnel in the summer of 2018 that if she needed to pursue LTD benefits as a result of the progression of her Lupus and her other debilitating conditions, she would be required to apply for SSDI (Social Security Disability Income) benefits.

27. Martin submitted a second appeal to the GE Benefits Center dated September 10, 2018, stating that the "previous appeal denial was incorrect and unjust."

28. As is standard operating procedure, in order to dress-up the file as well as to squeeze any remaining hope out of sick claimants such as Martin, Sedgwick asked NMR to obtain more consulting reports from its network. Unsurprisingly, none of the gathered opinions supported Martin's claim. On December 11, 2018, Sedgwick/GE denied Martin's second appeal. In the denial of Martin's second appeal, Sedgwick/GE acknowledged that Martin's treatment records indicated she had been diagnosed with Lupus, Gout, Meniere's disease, fibromyalgia, GERD, gastric ulcer, rheumatoid arthritis, degenerative disc disease, and neuropathy. Nevertheless, Sedgwick/GE decided that her symptoms from this constellation of serious health conditions were insufficient to warrant benefits under the SCP. Martin was advised that she had the right to submit a third appeal.

29. Most claimants would have been crushed by this time. They would have given up, especially if they suffered from Martin's severe illnesses. Not Martin. She submitted a third appeal, dated January 9, 2019.

30. Sedgwick/GE went to NMR to shop for more reports. NMR obliged. It was a foregone conclusion that none of the reports would be favorable to Martin's claim.

31. Relying upon those reports, Sedgwick denied Martin's third appeal by letter dated February 12, 2019.

***Martin Advised Her Claim For SCP Benefits Would be Reopened if Her Claim for SSDI Benefits Was Approved***

32. During the claim and appeals process, Martin was not only advised by Sedgwick/GE that she needed to submit a claim for SSDI benefits to the Social Security Administration if she wanted to be approved for LTD benefits, she was also told by Sedgwick/GE claims personnel that if her SSDI claim was approved, her claim for SCP benefits would be reopened.

***Martin Approved for SSDI Benefits***

33. On April 6, 2020, the Social Security Administration (SSA) sent Martin a Notice of Award letter, indicating that her application for SSDI benefits was approved and she was found disabled by the SSA on June 7, 2018, the day she could no longer work for GE.

34. Relying upon Sedgwick/GE's promise that they would re-open her claim if she was approved for SSDI, Martin sent the Award letter to Sedgwick/GE

on April 14, 2020. On April 20th, Sedgwick/GE responded with a letter that promised to review her SSDI approval. True to form, it was inaccurate and made little sense. The letter characterized her claim as an STD claim and asked her if she applied for SSDI benefits. Then, a day later, Segwick/GE sent Martin a letter saying it would not review her claim for benefits under the SCP because only three appeals were allowed, and since she had already submitted three appeals, she had exhausted her right to any further appeals or to reconsideration.

*Martin Advised That She Could Not File for LTD Benefits*

35. Martin requested the disability forms for LTD benefits from Sedgwick/GE during the claim and appeals period regarding SCP benefits. Martin was told by Sedgwick/GE personnel that she was not entitled to apply for LTD benefits unless she was approved by Sedgwick/GE for benefits under the SCP for the maximum period of 26 weeks.

36. The GE Benefits Handbook is consistent with this position taken by the adjustors with Sedgwick/GE. The Handbook counsels that the opportunity to apply for LTD benefits is conditioned upon approval of SCP benefits for the maximum period. Regarding submission of an LTD claim, it states in relevant part as follows:

> "You do not have to file a claim for LTDI benefits-If your disability is expected to extend past 26 weeks, the GE DBLC will automatically begin the GE Long Term Disability Income Plan application process for you while you are receiving SCP payments, provided you are enrolled in the Plan..............
> .............................
> GE Long term Disability Income (LTDI) Plan benefits begin after

11

your GE Salary Continuation Program (SCP) payments have been exhausted....."

## IV. CAUSES OF ACTION

### Count I: Breach of Contract

37. GE's Salary Continuation Program is a contract between GE and its employees, including Martin. Sedgwick/GE's denial of SCP benefits to Martin was a breach of that contract, as she was clearly eligible for benefits and her severe illnesses prevented her from performing the requirements of her occupation, or any full-time occupation. As mentioned, GE's SCP is not an ERISA plan but is a payroll practice that is exempt from ERISA. Therefore, this cause of action cannot be brought under the remedial provision of ERISA but instead is brought as a breach of contract claim.

38. Martin's cause of action for breach of contract began to accrue on February 12, 2019, when Sedgwick/GE denied her third appeal for benefits under the SCP.

### Relief Requested Under Count I

*Damages for the Deprivation of Benefits Under
the Salary Continuation Program Benefits*

39. The SCP provides that an approved claimant will receive the greater of 50% of pre-disability earnings or 60% of pre-disability earnings up to a cap of $850 per week for disabilities that occur on or after January 1, 2016 and 60% of pre-disability earnings up to cap of $900 per week for disabilities that occur

beginning January 1, 2018 or thereafter. Since Martin's pre-disability earnings were $88,000 annually ($1692.31 per week), and her disability began after January 1, 2018, the SCP benefit due her for the period of 26 weeks (the maximum period for which SCP benefits are paid, since she remains disabled since June 7, 2018) is $900 per week. Her damages as a result of the breach of contract by Sedgwick and GE in its refusal to pay her SCP benefits are $23,400 ($900 x 26 weeks).

*Damages for the Deprivation of LTD Benefits at 70% of Pre-Disability Pay*

40. Since receipt of LTD benefits was conditioned upon receipt of SCP benefits for the maximum period of 26 weeks, Sedgwick/GE's denial of SCP benefits was also a denial of LTD benefits. Martin has (and had) a meritorious claim for LTD benefits by virtue of the progression of her illnesses that is documented in her medical records and by virtue of the approval of SSDI benefits by the SSA (and the finding by the SSA that Martin has been disabled since June 7, 2018). To this day, she is not receiving LTD benefits as a direct result of Sedgwick/GE's denial of SCP benefits. The breach of contract stripped her of the right to receive LTD benefits for her lifetime. The lifetime LTD benefits denied her are consequential damages arising as a direct result of Sedgwick/GE's breach of contract in not approving Martin's claim for SCP benefits for the maximum period.

41. Since Martin opted for an LTD benefit of 70% of her pre-disability earnings, Martin's monthly LTD benefit is $5,133.33 ($88,000 x .7 =$61,600; $61,600/12 = $5,133.33). LTD benefits are coordinated with SPC benefits, so that

they begin after 26 weeks of disability. As a result, the commencement date for Martin's LTD benefit would have been December 6, 2018, had Sedgwick/GE not breached its contract with Martin and instead paid her SPC benefits for the maximum period.

42. Social Security disability benefits are an offset to LTD benefits. Martin's SSDI benefit is $2,059 per month. Therefore, Martin's consequential damages as a result of Sedgwick/GE's breach of contract equals $3074.33 per month, beginning December 6, 2018, the inception date for LTD benefits ($5133.33-$2059 = $3074.33).

43. As of April 6, 2023, Martin has incurred consequential damages of $159,848 ($3074.33 x 52 months) as a result of Sedgwick/GE's breach of contract.

*Damages for the Deprivation of Future LTD Benefits*

44. In all probability, due to Lupus and her other debilitating illnesses, Martin will remain unable to work at any full-time occupation for the rest of her life. According to the GE Benefits Handbook, if she remains disabled she is entitled to LTD benefits under the policy for the remainder of her life. Martin's date of birth is April 23, 1984. She will turn 65 years of age on April 23, 2049 (approximately 26 years from now). Until age 65 she would be entitled to her regular monthly benefit of $3074 per month. After age 65, she would be entitled to 25% of her regular monthly earnings ($88,000 x .25 = $22,000; $22,000/12 = $1,833.33 per month). In addition to past due benefits, Martin requests that the

present value of future LTD benefits be awarded as damages as a result of Sedgwick/GE's breach of contract.

45. The present value of her future benefits until age 65, discounted at the rate of 2% per annum, is $742,224.77. Martin requests these damages as well as damages for being deprived of past due benefits as a result of Sedgwick/GE's breach of contract.

*Alternative Relief Regarding Future Benefits*

46. In the alternative, regarding LTD benefits that would be due after a favorable judgment, Martin requests a declaration that she was entitled to SCP benefits for the maximum period, she has been entitled to LTD benefits from December 2018 until the time of judgment, and that she be declared to be entitled to LTD benefits as of the date of judgment, and that future LTD benefits (benefits after the date of judgment) be paid and monitored in accordance with the terms of the GE Long Term Disability Income Plan.

*Equitable Tolling of Her Right to Request LTD Benefits*

47. In the alternative, if LTD benefits are not awarded as damages, Martin requests that she be entitled to submit a request for benefits under the LTD Plan, and that any requirement for submission of an LTD claim or documents supporting an LTD claim be equitably tolled from the February 12, 2019 denial until the time of judgment as to SCP benefits as a result of the denial of SCP benefits by Sedgwick/GE.

## V. ATTORNEY'S FEES

48. Martin seeks her reasonable attorney's fees under the authority of Chapter 38 of the Texas Civil Practice and Remedies Code, which allows the recovery of attorney's fees for a successful breach of contract claim when there is a written contract. The GE Benefits Handbook is the written contract that promises SCP benefits to eligible employees who become disabled. Martin presented her SCP claim for payment by virtue of the three appeals that she submitted that are described this complaint. Sedgwick/GE dishonored her claim, time and time again. More than 30 days has passed since her claim was dishonored, and her only recourse was to hire counsel to pursue her claim with this Complaint.

## CONCLUSION

Wherefore, premises considered, Martin requests damages as a result of Sedgwick/GE's breach of contract in the amount of $183,248, representing deprivation of benefits due as of April 6, 2023, plus damages as a result of the wrongful deprivation of monthly disability benefits that accrue after April 6, 2023 but while this case is pending at the rate of $3074 per month, plus damages as a result of the wrongful deprivation of future LTD benefits, the present value of which is $742,224.77. In the alternative, in regards to future benefits, she requests that she be declared an entitled recipient of benefits of the GE Long Term Disability Income Plan as of the date of judgment and that benefits be paid and monitored in accordance with the terms of the Plan. In the alternative, she requests

that she be awarded damages in the amount of SCP benefits for the maximum period of 26 weeks and that she be permitted to submit a claim under the GE Long Term Disability Plan with a benefit start date of the day after expiration of SCP benefits; and a declaration that the time requirements for submitting an LTD claim is equitably tolled from the date of the final denial of SCP benefits until the date of a favorable judgment for SCP benefits.  She also requests her attorney's fees, costs, pre-judgment interest at the maximum rate allowed by law, post-judgment interest, and for such other and further relief, both at law and in equity, to which she may show herself to be justly entitled.

Respectfully Submitted,

**Law Office of Jeffrey E. Dahl**
The Commerce Building
314 E. Commerce, Suite 300
San Antonio, Texas  78205
(210) 527-0900 (Telephone)
(210) 527-0901 (Facsimile)
jdahl@erisaattorneyintexas.com

By:  */s/ Jeffrey E. Dahl*
**Jeffrey E. Dahl**
**State Bar No. 05310900**
**Attorney for Plaintiff Shantyry Martin**