IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| SHANTYRY MARTIN,<br>　　　*Plaintiff*<br><br>-vs-<br><br>SEDGWICK CLAIMS MANAGEMENT<br>SERVICES INC., GENERAL ELECTRIC<br>COMPANY,<br>　　　*Defendants* | §<br>§<br>§<br>§  SA-23-CV-00169-XR<br>§<br>§<br>§<br>§<br>§ |

**ORDER**

On this day, the Court considered the above-captioned case. Before the Court is Defendants Sedgwick Claims Management Services, Inc. ("Sedgwick") and General Electric Company's ("General Electric" or "GE") (together, "Defendants") motion to dismiss (ECF No. 7), Plaintiff Shantyry Martin's response (ECF No. 8), and Defendants' reply (ECF No. 11). After careful consideration, Defendants' Motion to Dismiss is **GRANTED.**

I.　　FACTUAL BACKGROUND

A. Disability Benefit Programs

Defendant General Electric provides a "salary continuation program" ("SCP") for its employees. The program is "designed to continue all or a portion of [an employee's] pay when a short term or extended illness, injury or other serious medical condition prevents" that employee from working. ECF No. 7-1 § 6.4.[1] Employees are automatically eligible for SCP benefits as of

---

[1] Defendants' motion to dismiss includes four attached exhibits, including (1) the GE Benefits Handbook: Disability, Life and Other Benefits ("Disability Handbook"), ECF No. 7-1; (2) the GE Benefits Handbook: Eligibility and Administrative Information ("Administrative Handbook"), ECF No. 7-2; (3) a Disability Benefits & Leave Center ("Disability Center") appeal denial letter dated June 29, 2018, ECF No. 7-3; and (4) a Disability Center denial letter dated February 12, 2019, ECF No. 7-4. In general, a court addressing a motion under Rule 12(b)(6) "must limit itself to the contents of the pleadings, including attachments thereto." *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (citation omitted). When a pleading references documents that are central to a claim, the Court may consider such documents if attached to the motion to dismiss. *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99

their first day of work and all benefits are considered part of the employee's normal compensation. *Id*. § 6.4.1 The SCP is a "pay-roll practice" exempt from regulations under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1002(1). ECF Nos. 2 at 5; 7 at 3.

To receive SCP benefits, an employee "must be under the care of a doctor whose certification of . . . disability is approved" by the GE Disability Benefits & Leave Center (the "Disability Center"). ECF No. 7-1 § 6.4.5; ECF No. 7 at 2-3. Employees are considered disabled for purposes of the SCP if the Disability Center determines they are "unable to perform the duties of [their] regular job or another job." ECF No. 7-1 § 6.4.5. Disabled employees are entitled to SCP benefits for up to 26 weeks. *Id*. General Electric contracts with Defendant Sedgwick to manage the SCP through the Disability Center. ECF No. 2 at 6.

Employees can also enroll in a long-term disability ("LTD") plan and must pay premiums for coverage. *Id*. at 5.[2] To receive LTD benefits, employees must be "totally disabled," and "under a doctor's care for the disability." ECF No. 7-1 § 6.5.7.[3] For employees who receive 26 weeks of SCP benefits, LTD benefits begin automatically after the SCP runs out. *Id*. § 6.5.6; *id*. § 6.5.7. ("GE Long Term Disability Income (LTDI) Plan benefits begin after your GE Salary Continuation Program (SCP) payments have been exhausted."). For employees not eligible for SCP payments, LTD benefits begin 26 weeks after the onset of the disability. *Id*. § 6.5.7.[4]

---

(5th Cir. 2000). "A document is central to a claim when it is 'necessary to establish an element' of the claim." *Pylant v. Cuba*, No. 3:14-CV-0745-P, 2015 WL 12753669, at *2 (N.D. Tex. Mar. 6, 2015) (quoting *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011)). However, "if the operative pleading references a document that 'is merely evidence of an element' of a claim, the courts do not incorporate it into the pleading." *Id*. Because the terms of the Disability and Administrative Handbooks, as well as the June 2018 and February 2020 denial letters are central to Plaintiff's complaint, the Court will consider these exhibits.
[2] Defendants' motion to dismiss refers to the long-term disability plan as the "LTDI Plan," the long-term disability income plan. The Court will refer to this plan as the "LTD" or the "LTD Plan."
[3] GE defines "totally disabled" as "unable to perform the regular duties of [the employee's] job or an alternate job, if one is available and is medically appropriate and consistent with [the employee's] training, education, experience and compensation, as determined by the" Disability Center. *See* ECF No. 7-1 § 6.5.7.
[4] Defendant maintains that employees who are ineligible for SCP benefits must still submit a claim for LTD benefits. *See* ECF No. 7 at 4 (citing ECF Nos. 7-1 § 6.5.7; 7-2 § 2.1.1).

### B. Plaintiff's Employment with Defendant GE

In May 2015, Plaintiff Shantyry Martin began working for GE as a quality inspector. ECF No. 2 at 4. Once she was hired, Plaintiff was automatically eligible for SCP coverage. *Id*. at 5. She also selected the highest level of LTD coverage, entitling her to 70% of her pre-disability salary of approximately $88,000. *Id*.

Plaintiff later began experiencing joint pain and fatigue which hindered her ability to work. *Id*. at 4. After visiting a specialist, Plaintiff was diagnosed with Systemic Lupus Erythematosus ("Lupus") in 2016. *Id*. Over the next year, she was also diagnosed with rheumatoid arthritis, gout, fibromyalgia, and peripheral neuropathy *Id*.; *see also* ECF No. 7 at 2. Plaintiff continued to work until 2018 when her doctor recommended that she stop.[5] ECF No. 2 at 4. Accordingly, Plaintiff's last day of work was June 6, 2018. *Id*.

The next day, Plaintiff notified the Disability Center that she stopped working because of her Lupus and other conditions and needed to file a claim for SCP benefits. *Id*. at 7. However, on June 29, 2018, Defendants denied Plaintiff's claim on the basis that it did not receive a statement from her attending physician certifying her disability. *Id*. at 7.

Plaintiff appealed this decision and provided records from her doctor, Dr. Alex DeJesus. *Id*. The records detailed Plaintiff's physical symptoms included the doctor's conclusions regarding Plaintiff's conditions. *Id*. at 8.[6] Sedgwick forwarded these medical records to Network Medical Review Co. Ltd. ("NMR"), a third-party Sedgwick used to review medical documents for

---

[5] Dr. DeJesus found that the "demands of work were causing an accelerated progression" of Plaintiff's Lupus and were harming her general health. ECF No. 2 at 4. Plaintiff states that her various conditions were "taking their toll on [Plaintiff's] joints, organs, fatigue levels, and even brain function." *Id*.

[6] Dr. DeJesus reported that Plaintiff experienced "fatigue[], sweat[] heavily at night, right eye worsening vision, blurr[ed] vision, floaters in visual field, photopsia, mouth sores, nasal mucosa ulcers, sinus pain, hearing loss in right ear, mouth dryness, ringing in ears, chest pain, palpitations, edema, tachycardia, leg pain with exercise, shortness of breath, cough, wheezing hemoptysis, abdominal pain, constipation, heartburn, heat intolerance, cold intolerance, dysphagia, headache, dizziness, vertigo, difficulty with balance, back pain, foot pain, and hand pain." *Id*. at 8.

disability claims. *Id*. at 8. NMR's rheumatologist, Dr. David S. Silver, found that Plaintiff suffered from Lupus but that the provided records lacked sufficient evidence of physical impairment to support Plaintiff's disability claim. *Id*. Although Plaintiff directed NMR to Dr. DeJesus's notes describing her symptoms, Defendants ultimately concluded that Plaintiff did not qualify for benefits and denied her appeal on September 4, 2018.[7] *Id*.

On September 10, 2018, Plaintiff submitted a second appeal. *Id*. at 9. Defendant denied the appeal on December 11, 2018, and reiterated its finding that Plaintiff's symptoms were insufficient to warrant SCP benefits. *Id*. Defendants advised Plaintiff that she could file a third appeal, *id*. at 9, which she did January 9, 2019, *id*. at 9–10. After receiving "more reports" from NMR, Defendants denied Plaintiff's third appeal on February 12, 2019. *Id*. at 10.

While Plaintiff pursued her SCP claim, she also tried to submit a claim under GE's long-term disability program. *Id*. at 11. During the summer of 2018, Defendants told Plaintiff that she needed to apply for social security disability insurance ("SSDI") through the Social Security Administration ("SSA") before pursuing LTD benefits. *Id*. at 9. Defendants also told Plaintiff that they would reopen Plaintiff's SCP claim if her SSDI benefits were approved. *Id*. at 9–10.

On April 6, 2020, the Social Security Administrative found that Plaintiff was "disabled" as of June 7, 2018, and awarded her SSDI benefits. *Id*. at 10. Plaintiff then attempted to reopen her SCP claim and seek long-term benefits. *Id*. However, on April 21st, Defendants informed Plaintiff that they would not review her SCP benefits claim because she exhausted her three appeals. *Id*. at 11. Defendants also told Plaintiff that she was not entitled to LTD benefits because she was ineligible for SCP benefits. *Id*. at 11.

---

[7] Plaintiff notes that the denial letter also erroneously referred to GE's SCP as a "STD Plan," and stated that the STD Plan was an ERISA plan. *Id*. at 8–9.

4

Plaintiff filed this suit on February 10, 2023. ECF No. 1. She amended her complaint three days later. ECF No. 2. Before the Court, Plaintiff alleges that Defendants violated the terms of GE's Salary Continuation Program when it wrongfully denied her benefits. *See generally id*. She argues that this conduct amounts to breach of contract. *Id*.

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

"[D]ismissal for failure to state a claim based on the statute of limitations defense should be granted only when the plaintiff's potential rejoinder to the affirmative defense was foreclosed by the allegations in the complaint." *Acad. of Allergy & Asthma in Primary Care v. Quest Diagnostics, Inc.*, 998 F.3d 190, 196 (5th Cir. 2021) (citing *Jaso v. The Coca Cola Co.*, 435 F. App'x 346, 352 (5th Cir. 2011)). Resolving contractual ambiguities is a is a question of law for the Court to resolve. *Instone Travel Tech Marine & Offshore v. Int'l Shipping Partners, Inc.*, 334 F.3d 423, 428 (5th Cir. 2003); *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 861 (Tex. 2000).

### III.   DISCUSSION

Plaintiff asserts a claim for breach of contract. Under Texas law, Plaintiff must establish (1) there was a valid contract between the parties, (2) Plaintiff performed or tendered performance, (3) the defendant breached the contract, and (4) the plaintiff was damaged as a result of the breach. *Williams v. Wells Fargo Bank, N.A.*, 884 F.3d 239, 244 (5th Cir. 2018) (quoting *Caprock Inv. Corp. v. Montgomery*, 321 S.W.3d 91, 99 (Tex. App.—Eastland 2010, pet. denied)); *Brooks v. Excellence Mortg., Ltd.*, 486 S.W.3d 29, 36 (Tex. App. 2015).

Texas law provides a default four-year statute of limitations. TEX. CIV. PRAC. & REM. CODE § 16.051. Thus, "[a] party asserting a breach of contract claim must [typically] sue no later than four years after the day the claim accrues." *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002) (citing TEX. CIV. PRAC. & REM. CODE § 16.051). However, parties can contractually agree to a limitations period between two and four years. TEX. CIV. PRAC. & REM. CODE § 16.070 (making "void in [Texas]" any "stipulation, contract, or agreement that establishes a limitations period that is shorter than two years").

6

### A. Limitations Period

Both parties agree that the terms of the SCP plan are determined by the Benefits Handbooks. *See* ECF Nos. 2 at 14; 7 at 6; 7-1 (Disability Handbook); 7-2 (Administrative Handbook).

Section 2.1.2 of the Administrative Handbook reads:

> If you wish to file *a lawsuit against a Plan* (a) to recover benefits you believe are due to you under the terms of the Plan or any law; (b) to clarify your right to future benefits under the Plan; (c) to enforce your rights under the Plan; or (d) to seek a remedy, ruling or judgment of any kind against the Plan or the Plan fiduciaries or parties-in-interest (within the meaning of ERISA) that relates to the Plan, you may not file a lawsuit until you have exhausted the claims procedures described in Section 2.1.1, "WHAT ARE THE CLAIMS AND APPEALS PROCEDURES?" and you must file the suit within the Applicable Limitations Period or your suit will be time-barred. However, neither this paragraph nor the Applicable Limitations Period applies to a claim governed by Section 413 of ERISA, except as permitted by law.
>
> The Applicable Limitations Period is the period ending three years after:
>
> 1. In the case of a claim or action to recover benefits allegedly due to you under the terms of the Plan or to clarify your right to future benefits under the terms of the Plan, the earliest of: (a) the date the first benefit payment was actually made, (b) the date the first benefit payment was allegedly due, or (c) the date the Plan, the Plan Administrator, the claims administrator, or any representative of the Plan *first repudiated its alleged obligation* to provide such benefits (regardless of whether such repudiation occurred during review of a claim under the claims procedures described in this document); or
>
> 2. In the case of any other claim or action, the earliest date on which you knew or should have known of the material facts on which the claim or action is based, regardless of whether you were aware of the legal theory underlying the claim or action.
>
> [. . . ]
>
> A claim for Plan benefits or an appeal of a complete or partial denial of a claim, *as described in the claims and appeals sections, generally falls under (1) above* . . .
>
> The Applicable Limitations Period replaces and supersedes any limitations period that ends at a later time that otherwise might be deemed applicable under any state or federal law.

ECF No. 7-2 § 2.1.2 (emphasis added).

7

Defendants argue that the Plaintiff's breach of contract claim for SCP benefits is time-barred under the three-year limitations period established in the Administrative Handbook or, alternatively, the four-year default under Texas law. ECF No. 7 at 7.

Plaintiff responds that the limitations period in the Administrative Handbook only applies to lawsuits against "Plans," a phrase she interprets as including only ERISA-governed insurance plans. ECF No. 8 at 5. Under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1132 *et seq*., participants or beneficiaries of an employer-provided, ERISA-covered insurance plan can sue to recover benefits under their plan. 29 U.S.C. §1132(a)(1). Employees are authorized to sue their insurance plan directly, as opposed to suing their employer or insurance provider. 29 U.S.C. §1132(d)(1) ("An employee benefit plan may sue *or be sued under this subchapter as an entity*.").

Because Section 2.1.1 of the Administrative Handbook establishes the limitations period for "a lawsuit against a Plan," which Plaintiff interprets as a term of art, Plaintiff argues that the limitations period applies only to GE's ERISA insurance plans, like the LTD plan. ECF No. 8 at 5. Because the SCP is ERISA-exempt, Plaintiff argues that it is not subject to the same three-year limitations period but is instead governed by the default four-year period of limitations outlined in the Texas Civil Practices and Remedies Code. *Id*. at 5–6; *see* TEX. CIV. PRAC. & REM. CODE § 16.051.

Plaintiff maintains that her argument is further supported by a statement in the Administrative Handbook which reads:

> This handbook is part of the summary plan descriptions for health, life insurance, disability and certain other GE welfare plans or programs *described in Section 2.1.9*, "ADDITIONAL PLAN INFORMATION AS OF JANUARY 1, 2016" (collectively referred to as the "Plans"), which are available to eligible Company employees.

8

ECF No. 7-2 at 29 (emphasis added). Plaintiff argues that this statement indicates the Administrative Handbook applies only to those plans outlined in Section 2.1.9. Section 2.1.9 is entitled "Additional Plan Information as of January 1, 2016" and lists 15 employer-provided plans. *Id*. at 61. Notably, Section 2.1.9 includes the "GE Long Term Disability Income Plan (LTDI) For Salaried Employees" but does not include the SCP. *Id*. at 62. Because Section 2.1.9 omits the SCP, Plaintiff argues that the Administrative Handbook does not apply to GE's SCP. *Id*. at 4–5.

However, as Defendants argue, the SCP plan is certainly a "disability" plan governed by the Administrative Handbook. ECF No. 11 at 4; *see also* ECF No. 7-2 at 3 (describing the December 2018 updates and stating the Handbook is designed to "describe the claims and appeals procedures for GE Long-Term Disability Income Plan Benefits, as required by federal regulations" as well as "claims under the GE Salary Continuation Program").

Moreover, Plaintiff's interpretation of Section 2.1.2 is incomplete. Plaintiff is correct that Section 2.1.2 applies to lawsuits "against a Plan" and ERISA allows suits against an insurance plan directly. However, Plaintiff overlooks that Section 2.1.2 also states that a "a claim for Plan benefits or an appeal of a complete or partial denial of a claim, *as described in the claims and appeals sections*, generally falls under" the limitations guidelines prescribed. The "claims and appeals section" (aptly titled "2.1.1. What are the Claims and Appeals Procedures") explicitly states:

> The claims procedures described in this section apply to all or some of the Plans *and the GE Salary Continuation Program (the "SCP"),* as indicated below. However, the SCP is not subject to ERISA and the provisions of this handbook shall not be interpreted in a manner that applies ERISA (or any of its requirements) to the SCP.

ECF No. 7-2 § 2.1.1 at 40, 47. Accordingly, the SCP plan is a "Plan" "as described in the claims and appeals section."

Read as a whole, the Benefits Handbooks apply to all of GE's offered disability "Plans," including the SCP. Not only does Section 2.1.2 incorporate the SCP plan by reference but the

9

Handbook repeatedly states that its terms "apply to the GE Salary Continuation Program." *See* ECF No. 7-2 at 3, 47. Therefore, Plaintiff's claims for short-term disability benefits are governed by the plain terms of the Administrative Handbook and are subject to the three-year limitations period prescribed therein.

By the plain terms of the contract, Plaintiff's claim accrued on "the date the Plan, the Plan Administrator, the claims administrator, or any representative of the Plan first repudiated its alleged obligation to provide such benefits (regardless of whether such repudiation occurred during review of a claim under the claims procedures described in this document)." ECF No. 7-2 § 2.1.2. Defendants' representatives first denied Plaintiff's request for SCP benefits on June 29, 2018. ECF Nos. 2 at 7, 7-3 at 2.[8] Plaintiff had three years to file suit from that date. She did not file, however, until February 10, 2023–more than three years later. Plaintiff's claim for SCP benefits is thus barred by the contractual limitations period.[9]

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss (ECF No. 7) is **GRANTED.** Plaintiff's short-term disability breach of contract claim **DISMISSED** because it was brought outside the contractual limitations period. A final judgment will be issued in accordance with Federal Rule of Civil Procedure 58.

---

[8] ECF No. 7-2 at 2 ("GE Salary Continuation Program: After review of your salary continuation (SCP) claim, it has been determined that you do not qualify for benefits under the Extended Illness Payments under the GE Salary Continuance Program, therefore your benefits are denied from June 07, 2018 through a return to work date.").

[9] Plaintiff also argued that her claim did not accrue until Defendants issued the third, final denial of her SCP claim. ECF No. 8 at 8–9 (arguing that "no legal injury occurs until a final denial is issued, i.e., the claim does not accrue for limitations purposes until the date of the final denial."). Defendants issued the final denial on February 12, 2019. ECF No. 7-4 ("We have completed our review of your short-term disability (STD) appeal request, and confirmed that you do not qualify for benefits under the GE STD Plan . . . This represents the GE Disability Benefits & Leave Center Appeals Unit final decision with respect to your STD claim. You have no remaining appeal rights."). Even if Plaintiff's claim did not accrue until February 12, 2019, she still needed to sue within three years in accordance with the Benefits Handbooks. Thus, Plaintiff needed to bring suit by February 14, 2022. However, Plaintiff did not sue until February 10, 2023, almost four years after the final denial. Therefore, this argument is futile.

It is so **ORDERED.**

**SIGNED** this 12th day of July, 2023.

                                                        Xavier Rodriguez
                                                        United States District Judge